## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **JOYCE SALLAM, et al.,** | **Case No. 1:20-CV-1731** |
| **Plaintiffs,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **MARK HANSEN, et al.,** | **MEMORANDUM OPINION AND ORDER** |
| **Defendants** | |

This matter concerns the denial of a Form I-130 Petition for Alien Relative ("I-130 Petition") filed by Plaintiff Joyce Sallam (hereinafter "Mrs. Sallam") on behalf of her husband Plaintiff Mahmoud Sallam (hereinafter "Mr. Sallam").  Mrs. Sallam's third Form I-130 Petition was denied by the United States Citizenship and Immigration Services ("USCIS") and the denial was affirmed by the Board of Immigration Appeals ("BIA").  Plaintiffs seek review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*

Currently pending are two Motions for Summary Judgment.  Defendants Stephanie Reither, Acting District Director for District N12; Alejandro Mayorkas, Secretary of the Department of Homeland Security ("DHS"); Ur M. Jaddou, Director of USCIS; John Certo, Acting Field Office Director; and Merrick Garland, Attorney General of the United States filed a Motion for Summary Judgment on April 12, 2021.[1]  (Doc. No. 17.)  In response, Plaintiffs filed a combined Cross Motion for Summary Judgment and Opposition to Defendants' Motion on May 14, 2021.  (Doc. No. 19.)

---

[1] In the Complaint, Plaintiffs name Mark Hansen as the District 13 Director of USCIS; Chad Wolf as the Acting Secretary of the Department of Homeland Security; Kenneth Cuccinelli as the Director of USCIS; Karyn Zarlenga as the Field Office Director of the Cleveland Field Office of USCIS; and William Barr as the Attorney General of the United States. (Doc. No. 1.)  Pursuant to Fed. R. Civ. P. 25(d), Stephanie Reither, Alejandro Mayorkas, Ur M. Jaddou, John Certo, and Merrick Garland are substituted in place of these Defendants, respectively.

Defendants filed a combined Opposition to Plaintiffs' Motion and Reply in Support of their Motion on May 28, 2021.  (Doc. No. 20.)  For the following reasons, Defendants' Motion is GRANTED and Plaintiffs' Motion is DENIED.

## I.  Background

The plaintiffs are a married couple, Joyce and Mahmoud Sallam.  Mrs. Sallam is a United States citizen and was born in Cleveland, Ohio.  (Joyce Sallam Letter[2], Doc. No. 15-3, PageID# 220.) Mr. Sallam is an Egyptian citizen and was born in the United Arab Emirates.  (Mahmoud Sallam Letter, Doc. No. 15-3, PageID# 222.)  Mrs. Sallam has filed three Form I-130 petitions with USCIS on behalf of Mr. Sallam, seeking to obtain an immigrant visa for him, based on his status as her spouse and immediate relative.  (8/9/2019 USCIS Denial, Doc. No. 15-1, PageID# 147-48.)  USCIS has denied all three petitions.  (*Id.*)  The BIA affirmed USCIS's denial of Mrs. Sallam's third I-130 petition on 6/4/2020.  (6/4/2020 BIA Dismissal, Doc.No. 15-1, PageID# 144-45.)  The instant matter stems from the BIA's 6/4/2020 order affirming USCIS's 8/9/2019 denial of Mrs. Sallam's third I-130 petition.

### A.  The Sallams' Relationship Prior to January 15, 2014

Mr. and Mrs. Sallam met at South Park Mall in Strongsville, Ohio in 2013.  (Georgette Krohn Affid., Doc. No. 15-7, PageID# 472.)  At the time, Mr. Sallam was visiting the United States from Egypt on a tourist visa.  (7/31/2018 USCIS Denial, Doc. No. 15-7, PageID# 442.)  The Sallams spent time together throughout the summer of 2013 and remained in contact via a cell phone app called

---

[2] Along with their Motion, Defendants filed a "Certified Administrative Record."  (Doc. No. 15.)  The Court will refer to this as the administrative record.  The record is voluminous and, for purposes of this opinion, pinpoint citations are to the PageID# numbers stamped at the top of the administrative record.

"Viber" after Mr. Sallam returned to Egypt in September 2013.  (Joyce Sallam Affid., Doc. No. 15-3, PageID# 210; Mahmoud Sallam Affid., Doc. No. 15-3, PageID# 217.)

On November 15, 2014, Mr. Sallam reentered the United States on a "B1/B2 nonimmigrant visitor" visa.  (11/19/2016 USCIS Denial, Doc. No. 15-9, PageID# 606.)  Upon entry, Mr. Sallam informed immigration officers that his destination address was 6352 Mallo Place, Cleveland, Ohio.  (*Id.*)  According to Mr. Sallam, he provided the officers with the Mallo Place address because Mr. Sallam could not recall Mrs. Sallam's address and the officer advised him to write down the address at which Mr. Sallam stayed during his previous visit to the United States.  (Mahmoud Sallam Affid., Doc. No. 15-3, PageID# 217.)  However, the Sallams assert that Mr. Sallam immediately moved into Mrs. Sallam's Broadview Heights, Ohio apartment upon arrival on November 15, 2014.  (Doc. No. 15-9, PageID# 606.)

## B.    Mrs. Sallam's First I-130 Petition

Mrs. Sallam and her mother, Georgette Krohn, added Mr. Sallam to their lease for the Broadview Heights apartment on January 11, 2015.  (Lease Addendum, Doc. No. 15-10, PageID# 732.)  The Sallams married on January 15, 2015 at the courthouse in Broadview Heights, Ohio.  (Sallam Marriage License, Doc. No. 15-9, PageID# 626.)

Shortly thereafter, Mrs. Sallam filed her first Form I-130, Petition for Alien Relative, with USCIS on Mr. Sallam's behalf on February 2, 2015.  (11/19/2016 Denial, Doc. No. 15-9, PageID# 591.)  To support the *bona fide* nature of their marriage, Mrs. Sallam submitted a copy of their marriage record, Mrs. Sallam's divorce decree from her previous marriage, various utility and insurance bills addressed jointly to the Sallams, screenshots of phone calls and text messages between

3

the Sallams that allegedly took place between September 2013 and November 2014[3] while Mr. Sallam was back in Egypt, copies of various dining and shopping receipts, photos from the Sallams' wedding and other undated photos, and affidavits in support of the Sallams from Mrs. Sallam's mother, sister, niece, and friend, as well as from Mr. Sallam's cousin.  (First I-130 Petition, Doc. No. 15-10, PageID# 717-800.)

On October 1, 2015, the Sallams appeared for separate interviews with a USCIS officer in the Cleveland Field Office.  (*Id.* at PageID# 592.)  Also on October 1, 2015, the Sallams submitted supplemental evidence to support their assertion that their marriage was *bona fide* including bills addressed jointly to the Sallams, wedding photos and other undated photos, shopping and dining receipts, and phone records.  (Supplemental Packet for Interview, Doc. No. 15-9, PageID# 674-714.)

USCIS commenced an investigation into the Sallams' marriage thereafter.  On July 7, 2016, USCIS officers visited the Sallams' apartment complex and interviewed the Sallams' across-the-hall neighbor.  (*Id.*)  The neighbor indicated that he recognized photos of Mrs. Sallam and her mother but did not recognize the photo of Mr. Sallam.  (*Id.*)  On the morning of July 14, 2016, USCIS officers returned to the Sallams' apartment.  (*Id.*)  Both Mr. and Mrs. Sallam were home, as was Krohn.  (*Id.*)  The officers observed a couch covered in bed linens.  (*Id.*)  Mrs. Sallam told officers that she slept on the couch to avoid disturbing Mr. Sallam.  (*Id.*)  The officers also observed that all of Mr. Sallam's belongings were stored in one bedroom closet but none of Mrs. Sallam's clothing was stored in that closet.  (*Id.*)  Mrs. Sallam indicated that she and Mr. Sallam stored their belongings separately.  (*Id.*)  Mrs. Sallam further indicated that she did not know whether she and Mr. Sallam filed their taxes jointly and did not remember the location of their tax documents.  (*Id.*)

---

[3] These screenshots, taken from the Viber app, are difficult to read and the dates are unclear.  (*See* Viber Screenshots, Doc. No. 15-8, PageID# 559-73.)

On August 19, 2016, USCIS issued a Notice of Intent to Deny ("NOID") to Mrs. Sallam. (8/19/2016 NOID, Doc. No. 15-9, PageID# 609.)  USCIS notified the Sallams that it intended to deny Mrs. Sallam's I-130 petition based on several discrepancies revealed in the investigation, including the officers' interview with the Sallams' neighbor, the site visit indicating that the Sallams apparently did not share a bedroom, and discrepant testimony between the Sallams regarding the amount of Mr. Sallam's weekly pay.  (*Id.*)  The Sallams filed a response to the NOID on October 6, 2016.  (*Id.*)  The Sallams submitted affidavits from Mrs. Sallam, Krohn, and Mr. Sallam's supervisor Ahmed Sholoby, as well as one page of their joint 2015 Ohio tax return, joint utility bills, a copy of their marriage license, and a copy of Mrs. Sallam's divorce decree from her prior marriage.  (10/6/2016 Response to NOID, Doc. No. 15-9, PageID# 612-32.)

On November 19, 2016, USCIS denied Mrs. Sallam's I-130 petition, based on the same inconsistencies it previously identified in the August 19, 2016 NOID.  (Doc. No. 15-9, PageID# 591-94.)  USCIS concluded that the evidence submitted by the Sallams in response to the NOID did not fully explain the inconsistencies discovered during the investigation.  (*Id.* at PageID# 593.)  USCIS also concluded that the joint utility bills did not demonstrate cohabitation, but only that a utility existed in the household.  (*Id.*)  Moreover, USCIS noted that it was questionable why the utility bills were in the Sallams' names when Mrs. Sallam's mother, Krohn, used her bank account to pay the bills.  (*Id.*)  USCIS further determined that Mrs. Sallam's and her mother's affidavits were self-serving and that Mrs. Sallam failed to submit any competent objective evidence to substantiate the assertions contained in her or her mother's affidavits.  (*Id.*)  Thus, USCIS concluded that Mrs. Sallam failed to meet her burden of proof in demonstrating that her I-130 petition should be approved.  (*Id.*)

5

### C.  Mrs. Sallam's Second I-130 Petition

On December 23, 2016, Mrs. Sallam filed a second I-130 petition on Mr. Sallam's behalf. (7/31/2018 Denial, Doc. No. 15-7, PageID# 441.)  Much of the evidence Mrs. Sallam submitted in support of her second petition is identical to the evidence submitted with her first petition, including certain apartment lease renewal letters and the screenshots of the Sallams' 2013-2014 Viber calls and text messages, exchanged after Mr. Sallam returned to Egypt.  (Second I-130 Petition, Doc. No. 15-8, PageID# 541-89.)  Mrs. Sallam also included apartment lease renewal letters from July 2016 and July 2017.  (*Id.*)  On August 17, 2017, the Sallams again appeared for separate interviews with an USCIS officer at the Cleveland Field Office.  (Doc. No. 15-7, PageID# 442.)

On March 8, 2018, USCIS issued its second NOID to Mrs. Sallam.  USCIS explained that the same inconsistencies that led it to deny Mrs. Sallam's first I-130 petition remained unexplained and thus compelled USCIS to deny the petition a second time.  (3/8/2018 NOID, Doc. No. 15-7, PageID# 448.)  Further, USCIS noted that Mrs. Sallam again failed to provide any "independent objective evidence" to substantiate the assertions made by the Sallams and their family and acquaintances in their affidavits.  (*Id.* at PageID# 450.)  On April 6, 2018, the Sallams responded to the NOID with several letters of support from individuals acquainted with the Sallams (including a letter from the Sallams' neighbor explaining that he indeed knew Mr. Sallam prior to July 2016 but simply did not recognize Mr. Sallam from the photo USCIS officers showed him), the Sallams' joint 2016 and 2017 tax returns, joint insurance documents, joint utility bills, and undated photographs.  (4/6/2018 Response to Second NOID, Doc. No. 15-7, PageID# 459-535.)  Mrs. Sallam also submitted medical progress notes from a July 6, 2015 doctor visit to substantiate her claim that she suffered from fibromyalgia and, therefore, needed to sometimes sleep on the couch due to her pain and/or insomnia.

6

(*Id.* at PageID# 531-35.)  Notably, these notes listed Mrs. Sallam's marital status as "Single with no children" as of July 6, 2015—despite having married Mr. Sallam fewer than six months prior.  (*Id.* at PageID# 533.)

On July 31, 2018, USCIS denied Mrs. Sallam's second I-130 petition.  (7/31/2018 Denial, Doc. No. 15-7, PageID# 441-47.)  USCIS's rationale for its second denial is nearly identical to its rationale for its first denial.  (*Id.*)  USCIS concluded that many of the inconsistencies listed in its first denial remained unresolved, including the Sallams' separate sleeping arrangements, the Sallams' discrepant testimony regarding Mr. Sallam's income and the filing of their taxes, and Mr. Sallam's use of the Mallo Place address when he arrived in the United States in November 2014 instead of Mrs. Sallam's Broadview Heights address.  (*Id.* at PageID# 443.)  USCIS again assigned little weight to Mrs. Sallam's and her mother's affidavits, determining that both were self-serving and unsubstantiated by independent objective evidence.  (*Id.*)  USCIS further concluded that the letters of support that the Sallams submitted in response to the second NOID "did not express a detailed familiarity with [the Sallams'] marriage."  (*Id.* at PageID# 445.)  USCIS also noted the serious discrepancy between Mrs. Sallam's marital status in early- to mid-2015 and her marital status as denoted in her July 6, 2015 medical progress note, which described her as "Single with no children." (*Id.*)  USCIS once against concluded that Mrs. Sallam "failed to meet her burden of proof in demonstrating the bona fide nature of [her] marriage to the beneficiary by a preponderance of the evidence" and therefore denied Mrs. Sallam's second petition.  (*Id.*)

On November 9, 2018, Mrs. Sallam attempted to appeal her second denial to the BIA.  (Appeal Filing Receipt, Doc. No. 15-7, PageID# 436.)  On March 15, 2019, the BIA rejected Mrs. Sallam's

appeal because neither Mrs. Sallam nor an appointed representative signed the Notice of Appeal to the BIA.  (3/15/2019 BIA Dismissal, Doc. No. 15-7, PageID# 427.)

### D.    Mrs. Sallam's Third I-130 Petition

Mrs. Sallam filed her third I-130 petition on August 31, 2018.  (8/31/2018 Letter re: I-130 Petition, Doc. No. 15-6, PageID# 412-13.)  Mrs. Sallam resubmitted much of the same evidence from her second I-130 petition with her third I-130 petition, including her divorce decree from her previous marriage, a copy of the Sallams' marriage record, an affidavit of support from Mr. Sallam's cousin, another affidavit from her across-the-hall neighbor, various undated photos of the Sallams, a July 2018 apartment lease renewal letter, a letter from the apartment property manager indicating that Mrs. Sallam lived in her apartment with her husband, and joint utility and insurance bills dated between 2018 and 2019.  (Third I-130 Petition, Doc. No. 15-6, PageID# 295-411.)  Mrs. Sallam also submitted 40 pages of nearly illegible phone logs, which appear different than the phone logs appended to previous petitions.  (*Id.* at PageID# 314-353.)

The Sallams appeared for separate interviews with a USCIS officer on November 28, 2018. (Doc. No. 15-1, PageID# 167.)  During their separate interviews, the Sallams reiterated that they loved each other very much.  (*Id.*)  The Sallams each asserted that Mrs. Sallam suffers from fibromyalgia, which causes memory problems, intermittent severe pain, and insomnia.  (*Id.*)  They further asserted that Mrs. Sallam sometimes sleeps on the couch to avoid waking up Mr. Sallam because of her insomnia and/or intermittent severe pain.  (*Id.*)

USCIS issued its third NOID on May 8, 2019.  (5/8/2019 NOID, Doc. No. 15-2, PageID# 181.)  USCIS noted that "[t]he evidence submitted in the current petition was submitted with the previous Form I-130 petition" and that "[t]he evidence was also dated before the last denial of [Mrs.

8

Sallam's] last Form I-130 petition on July 31, 2018." (*Id.* at PageID# 185.)  USCIS noted that the Sallams' joint utility bills were dated in early- to mid-2018 and the Sallams' insurance policy was dated December 7, 2017.  (*Id.*)  USCIS concluded that Mrs. Sallam's "evidence does not establish a bona fide relationship at inception as required" because it "was acquired after the inception of the relationship based on the dates of the evidence provided," i.e., several years after the Sallams married on January 15, 2015.  (*Id.*)

USCIS also noted that the undated photos provided some evidence of the Sallams' claimed relationship, but that they did not establish that the Sallams "have lived together in a marital union from the inception of [their] marriage."  (*Id.* at PageID# 186.)  Moreover, USCIS noted that neither the affidavit provided by Mr. Sallam's cousin nor the letter from the Sallams' apartment property manager expressed detailed familiarity with the Sallams' marriage.  (*Id.*)

On June 10, 2019, Mrs. Sallam filed a response to the third NOID.  (6/10/2019 Response to NOID, Doc. No. 15-2, PageID# 188.)  Mrs. Sallam submitted affidavits from herself and Mr. Sallam, as well as joint utility and insurance bills dated between August 2018 and May 2019, a March 27, 2019 insurance cancellation request jointly addressed to the Sallams, and copies of the Sallams' 2015 and 2018 joint tax returns.  (*Id.* at PageID# 188-294.)  Mrs. Sallam also resubmitted affidavits that she attached to her response to the second NOID.  (*Id.* at PageID# 195, 220-31.)  Finally, Mrs. Sallam also resubmitted her medical progress notes from her July 6, 2015 doctor visit, which indicated Mrs. Sallam's marital status as "Single with no children."  (*Id.* at PageID# 205-09.)

On August 9, 2019, USCIS denied Mrs. Sallam's third I-130 petition.  (Doc. No. 15-1, PageID# 165-71.)  Once again, USCIS determined that Mrs. Sallam failed to meet her "burden of proof in demonstrating the bona fide nature of [her] marriage to the beneficiary by a preponderance

9

of the evidence." (*Id.* at PageID# 169.)  USCIS observed that nearly all the evidence submitted in support of Mrs. Sallam's third petition had been previously submitted with her first and/or second I-130 petitions.  (*Id.* at PageID# 167-68.)  USCIS concluded that the evidence submitted in support of Mrs. Sallam's third petition was "insufficient to overcome the inconsistencies that were discovered during the investigation by USCIS." (*Id.* at PageID# 168.) USCIS identified the same inconsistencies it identified in its previous denials: the Sallams' sleeping arrangements, the Sallams' across-the-hall neighbor failing to recognize Mr. Sallam's photograph, the Sallams' discrepant testimony about Mr. Sallam's pay and their joint taxes, Mrs. Sallam's marital status being reported as "Single with no children" in her July 2015 medical notes, the Sallams' use of Mrs. Sallam's mother's bank account to pay bills which are addressed jointly to the Sallams, and Mr. Sallam's reporting of the Mallo Street address upon arrival to the United States in November 2014.  (*Id.* at PageID# 166-169.)

The USCIS offered several explanations as to why Mrs. Sallam's evidence was insufficient to satisfy her evidentiary burden.  USCIS determined that the Sallams' joint utility bills from 2018 and 2019 failed to establish a *bona fide* relationship at the marriage's inception on January 15, 2015 because they were dated three to four years after the marriage's inception.  (*Id.*)  USCIS also determined that while the Sallams' undated photos provided some evidence of a relationship, they did not establish that the Sallams have lived together in a marital union from the inception of their marriage because the photographs are undated.  (*Id.*)  USCIS also concluded that Mrs. Sallam failed to submit evidence from a medical professional to substantiate her claim that she needed to sleep on the couch due to her fibromyalgia.  (*Id.*)  Moreover, USCIS noted that there was a serious discrepancy between Mrs. Sallam's claimed marital status and her marital status as described in her July 6, 2015 medical progress notes.  (*Id.*)

10

USCIS noted that the only new evidence submitted in response to the third NOID were affidavits from the Sallams themselves.  (*Id.* at PageID# 168.)  USCIS concluded these affidavits "did not explain the deficiencies discovered during the investigation" and also that Mrs. Sallam failed to "provide any other evidence of a bona fide relationship at the inception of [her] marriage as requested."  (*Id.*)

On August 30, 2019, Mrs. Sallam appealed USCIS's third denial to the BIA.  (8/30/2019 Notice of Appeal, Doc. No. 15-1, PageID# 162.)  On June 4, 2020, the BIA dismissed Mrs. Sallam's appeal.  The BIA concluded that, upon *de novo* review of the record of proceedings, Mrs. Sallam "did not meet her burden of establishing by a preponderance of evidence that her marriage is bona fide, and therefore, affirm the visa petition denial."  (Doc. No. 15-1, PageID# 144.)  The BIA concluded that it "agree[d] with the Director that the petitioner did not meet her burden of proof, particularly considering she largely reiterated earlier allegations and resubmitted previously considered evidence."  (*Id.*)  The BIA agreed with USCIS's conclusion that Mrs. Sallam repeatedly failed to resolve the various inconsistencies in the record and establish the marriage as *bona fide* at inception.  (*Id.*)  As an example, the BIA pointed to Mrs. Sallam's failure to adequately explain "why she was identified as 'single' in her physician's July 2015 progress notes despite marrying the beneficiary months earlier."  (*Id.*)  The BIA further noted that Mrs. Sallam may file a new visa petition supported by competent evidence on Mr. Sallam's behalf.  (*Id.*)

The Sallams now bring this action pursuant to the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 701-706, seeking relief from the BIA's dismissal of Mrs. Sallam's appeal of USCIS's denial of her third I-130 petition.  (Doc. No. 1, ¶¶ 45-60.)  Defendants filed a Motion for Summary Judgment on April 12, 2021.  (Doc. No. 17.)  The Sallams filed a combined Cross-Motion for

11

Summary Judgment and Opposition to Defendants' Motion on May 14, 2021.  (Doc. No. 19.)

Defendants filed a combined Opposition to the Sallams' Motion and Reply in Support of the

Defendants' Motion on May 28, 2021.  (Doc. No. 20.)  Thus, this matter is now ripe for a decision.

## II.   Standards of Review

### A.    Motion for Summary Judgment

As an initial matter, the Sixth Circuit has noted that the summary judgment standard may not

be appropriate when it comes to judicial review of an agency's actions under the APA because it

invites "improper consideration of evidence outside the administrative record and reliance upon post

hoc rationalizations for the agency's action."  *Alexander v. Merit Sys. Protection Bd.*, 165 F.3d 474,

480-81 (6th Cir. 1999).  Nevertheless, a court "may enter judgment in response to a motion for

summary judgment so long as the proper standard of review is used."  *Taco Especial v. Napolitano*,

696 F. Supp. 2d 873, 877 (E.D. Mich. 2010) (citing *Alexander*, 165 F.3d at 480-81); *see also, e.g.,*

*Daraghma v. U.S. Citizenship and Immigration Services*, 228 F. Supp. 3d 818, 822 (N.D. Ohio 2017);

*Sholanke v. U.S. Citizenship & Immigration Services*, No. 1:18-cv-1929, 2020 WL 1452449 at * 4

(N.D. Ohio March 25, 2020), *aff'd* 853 Fed. App'x 23 (6th Cir. 2021).  Summary judgment is

appropriate when it "serves as the mechanism for deciding, as a matter of law, whether an agency

action is supported by the administrative record and is otherwise consistent with the APA standard

of review."  *Singh v. Johnson*, No. 15-cv-12957, 2016 WL 3476701, at *1 (E.D. Mich. Jun. 27, 2016);

*see also Sholanke*, 2020 WL 1452449 at * 4.

### B.    The Administrative Procedure Act ("APA")

District courts have jurisdiction to review a decision on the merits of a Form I–130 petition

to classify an alien as a relative of a United States citizen.  *Adi v. U.S.,* 498 Fed. Appx. 478, 480 (6th

12

Cir. 2012) (citations omitted). *See also Daraghma v. U.S. Citizenship and Immigration Services*, 228 F. Supp. 3d 818, 822 (N.D. Ohio 2017). Pursuant to the APA, courts shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency decision is arbitrary and capricious if the agency fails to examine the relevant evidence or articulate a satisfactory explanation for the decision. *See Bangura v. Hansen*, 434 F.3d 487, 502 (6th Cir. 2006).

This standard of review is narrow and deferential, and courts "should accept the agency's factual findings if those findings are supported by substantial evidence on the record as a whole." *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992). "Even when an agency explains its decision with less than ideal clarity," the decision will not be overturned "on that account if the agency's path may reasonably be discerned." *Bangura*, 434 F.3d at 502 (quoting *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 497 (2004)). Courts should make a "searching and careful" inquiry into the facts, but an agency's factual findings should be accepted if they are supported by substantial evidence on the record. *See National Cotton Council of America v. US. EPA*, 553 F.3d 927, 934 (6th Cir. 2009); *Ky. Waterways Alliance v. Johnson*, 540 F.3d 466, 474 (6th Cir. 2008). *See also Arkansas*, 503 U.S. at 113. As a general matter, only the administrative record, which includes all the materials before the agency at the time it made its decision, will be considered. *See Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997); *Makhamreh v. Attorney General Dep't of Justice*, No. 3:18-cv-227, 2020 WL 6146593, at * 4 (S.D. Ohio Oct. 20, 2020).

A court must not substitute its judgment for that of the agency and it cannot reweigh the evidence if the agency's conclusion was reasonable. *See Daraghma*, 228 F. Supp. 3d at 822. Instead, "the evidence 'must compel a different decision to be arbitrary and capricious.'" *Id*. (quoting *Adi v.*

*United States*, 2011 WL 9613 at * 5 (N.D. Ohio Jan. 3, 2011), *aff'd* 498 Fed. App'x 478 (6th Cir. 2012)).

## III.    Analysis

When a United States citizen marries a non-citizen immigrant, there is a process the couple may go through to obtain permanent residence or other adjustment in immigrant status for the non-citizen spouse. *See* 8 C.F.R. §§ 204.1, 204.2. *See also Sholanke*, 2020 WL 1452449 at * 4; *El Mokhamad v. Kelly*, No. 17-12417, 2018 WL 488953, at * 1 (E.D. Mich. Jan. 19, 2018). The first step in that process is a Form I-130 Petition which, if approved, allows a citizen to obtain an immigrant visa for an immediate relative. 8 U.S.C. § 1154(b). When a Form I-130 Petition is filed based on marriage, the petitioner must show by a preponderance of the evidence that the marriage was *bona fide* at its inception; i.e. that the couple intended to establish a life together at the time they got married. *See Sholanke,* 2020 WL 1452449 at * 4; *Makhamreh*, 2020 WL 6146593 at * 4. *See also Matter of Soriano*, 19 1. & N. Dec. 764 (B.I.A. 1988) ("The central question is whether the bride and groom intended to establish a life together at the time they were married"); *Matter of Laureano*, 19 I. & N. Dec. 1 (B.I.A. 1983) (same).

To guard against individuals attempting to subvert immigration laws by fraudulently claiming marriage, USCIS investigates each couple seeking approval of a Form I-130 Petition. The investigation may include interviews of the couple, their friends, and/or family. *See* 8 C.F.R. § 103.2(b). USCIS may also review the couples' financial records and consider their daily activities such as whether they live together and whether they associate with one another's friends and family. Petitioners may submit evidence of a *bona fide* marriage to USCIS throughout this process, but they

14

are not afforded a hearing prior to USCIS issuing its decision.   It is the petitioner's burden to establish

eligibility in visa petition proceedings.  *See Matter of Brantigan*, 11 I&N Dec. 493, 495 (BIA 1966).

The Court concludes that the Sallams cannot demonstrate that the BIA's 6/4/2020 dismissal

of Mrs. Sallam's petition was arbitrary and capricious under the APA.  In concluding that Mrs. Sallam

did not meet her burden of proof, the BIA expressly indicated that it conducted a *de novo* review of

the record of proceedings, including the USCIS's 8/9/2019 Denial and the 5/8/2019 NOID, and

adopted the USCIS's reasoning from its 8/9/2019 Denial.  (6/4/2020 BIA Decision, Doc. No. 15-1,

PageID# 144.)  The BIA found that Mrs. Sallam "did not adequately resolve the inconsistencies in

the record, and again has not sufficiently established the marriage bona fides."  (*Id.*)  In particular,

the BIA pointed to Mrs. Sallam's failure to adequately resolve the inconsistency between her alleged

marital status in her I-130 petition and her reported marital status ("Single with no children") in her

July 6, 2015 medical progress notes, which are dated shortly after the inception of her marriage to

Mr. Sallam.  (*Id.*)  This discrepancy in Mrs. Sallam's reported marital status is significant because it

undermines the Sallams' assertion that their marriage was *bona fide* around the time of its inception,

i.e., early- to mid-2015.   It was incumbent on Mrs. Sallam to "resolve the inconsistencies by

independent objective evidence," and any "[a]ttempt[ ] to explain or reconcile the conflicting

accounts, absent competent objective evidence pointing to where the truth, in fact, lies, will not

suffice."  *Matter of Ho*, 19 I. & N. Dec. 582, 591-92 (B.I.A. 1988); *see also, e.g., Sholanke*, 2020 WL

1452449 at * 6.  However, Mrs. Sallam offered no other evidence—let alone objective evidence—to

resolve this discrepancy beyond her own affidavit.  (Doc. No. 15-2, PageID# 211.)  Because the BIA

relied on the unrebutted inconsistencies in the record and the lack of marriage *bona fides* at the time

of the marriage's inception, the BIA's decision was neither arbitrary nor capricious and the Court will not disturb it.

The Sallams make several counterarguments urging the Court to overturn the BIA's decision, none of which are persuasive.  First, the Sallams contend that the Defendants failed to consider evidence of the Sallams' conduct before and after the inception of their marriage and that the Defendants assigned "little weight" to their evidence.  (Doc. No. 19, PageID# 838-39.)  The Court disagrees.  The BIA expressly conducted a *de novo* review of the entire record of proceedings and concluded that Mrs. Sallam failed to establish her marriage as *bona fide* by a preponderance of the evidence.  (Doc. No. 15-1, PageID# 144.)   The BIA's "decision is entitled to a presumption of regularity and thus a presumption that the evidence was considered."  *Aoraha v. Gonzales*, 209 Fed. App'x 473, 476 (6th Cir. 2006) (concluding that while the BIA's order did not expressly address the petitioners' new evidence, that fact did not require reversal); *see also, e.g., Araujo-Padilla v. Garland*, 854 Fed. App'x 646, 650 (6th Cir. 2021) (rejecting appellant's argument that the BIA failed to properly weigh certain hardship elements because "the Board expressly stated that it 'consider[ed] the totality of the respective hardship factors'" and, thus, such a decision was entitled to a presumption that the BIA considered the evidence).

Moreover, while the Sallams complain that USCIS failed to consider their explanations of certain inconsistencies (including their sleeping and financial arrangements, as well as Mrs. Sallam's July 2015 medical note indicating her marital status as "single"), the administrative record indicates that USCIS expressly considered the Sallams' post-hoc attempts to explain these inconsistencies.  In their affidavits, the Sallams explained why Mrs. Sallam sometimes sleeps on the couch, why the Sallams use Mrs. Sallam's mother's checking account to pay utility bills instead of a joint checking

16

account, and why Mrs. Sallam's July 2015 medical notes indicated her marital status as "single." (Doc. No. 15-3, PageID# 211, 217-18.)  However, beyond these affidavits, the Sallams submitted no independent objective evidence to substantiate their assertions and reconcile these inconsistencies. USCIS concluded that the Sallams' affidavits "did not explain the deficiencies discovered during the investigation by USCIS."  (Doc. No. 15-1, PageID# 168.)  Thus, while the Sallams' affidavits are evidence,[4] "the agency is permitted to weigh the evidence, and USCIS determined the affidavits were not sufficient to overcome the other evidence in the record" of inconsistencies.  *Sholanke v. U.S. Citizenship and Immigration Serv.*, 854 Fed. App'x 23, 28 (6th Cir. 2021).

The Sallams also contend that Mrs. Sallam's subsequent I-130 petitions have been "plagued" by the bias of the first USCIS officer to interview the Sallams in 2015.  (Doc. No. 19, PageID# 840.) Though the Sallams argue that the officer "[made] several improper comments and ask[ed] questions evidencing her bias toward Plaintiffs and their marriage," the Sallams identify only one specific instance of alleged bias during the officer's October 1, 2015 interview of Mrs. Sallam.   (*Id.* at PageID# 836.)  During the interview, the USCIS officer asked Mrs. Sallam whether she and Mr. Sallam had any "major future plans."  (10/1/2015 DVD, manually filed with the Court per Doc. No. 15.)  In the video, Mrs. Sallam looked plainly confused by the officer's question and the officer clarified quickly that she knows the Sallams had a courthouse wedding but asks whether the Sallams planned to have a large wedding celebration in the future.  (*Id.*)  Though the Sallams claim that the

---

[4] The Sallams also contend that Defendants failed to consider several pages of Viber text messages and phone calls between Mr. and Mrs. Sallam that took place prior to their January 2015 marriage.  (Doc. No. 19, PageID# 841.) However, Mrs. Sallam never submitted the Viber text and/or call logs with the at-issue third I-130 petition.  (*See* 8/31/2018 Letter from Mrs. Sallam's Attorney to USCIS, Doc. No. 15-6, PageID# 412-13.)  Nevertheless, USCIS considered the Viber messages and call logs in its 11/19/2016 denial of Mrs. Sallam's first I-130 petition.  (*See* Doc. No. 15-9, PageID# 592, noting that Mrs. Sallam submitted "phone records," among other evidence; *see also* Doc. 15-10, PageID# 740-54, screenshots of incoming and outgoing phone calls and messages between Mr. and Mrs. Sallam.)  Defendants were not obligated to discuss old evidence, which was not submitted with the third I-130 petition, in their denial of Mrs. Sallam's third I-130 petition.

17

officer had "an obviously disapproving tone," the interview video belies any such assertion.  (*Id.*)  The Sallams point to absolutely no other instance in which any USCIS officer or employee displayed any bias against them.  Thus, this argument is meritless.

Second, the Sallams contend that Defendants—in particular, the BIA—offered only conclusory explanations for their denial of Mrs. Sallam's petition, which renders the rejection of the petition arbitrary and capricious.  (Doc. No. 19, PageID# 842.)  The Court disagrees.  First, the BIA is not required to "exhaustively analyze every individual piece of evidence and each individual subargument" before it.  *Kilic v. Barr*, 965 F.3d 469, 474 (6th Cir. 2020).  The BIA has no duty "to write an exegesis on every contention" asserted by the Sallams.  *Scorteanu* v. I.N.S., 339 F.3d 407, 412 (6th Cir. 2003).  Rather, it is sufficient that the BIA "consider the issues raised[ ] and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted."  *Id.* (internal quotation omitted).  Moreover, the BIA is charged "with issuing a 'brief order'" in cases such as these in the interest of judicial efficiency, and therefore "need not, and should not, 'mention every piece of evidence before it or every logical element of a motion.'"  *Navarro v. Holder*, 505 Fed. App'x 441, 447 (6th Cir. 2012) (quoting *Precaj v. Holder*, 491 Fed. App'x 663, 669 (6th Cir. 2012)).

While the BIA's dismissal of Mrs. Sallam's appeal is short, the BIA announced that it reviewed the entire record, including USCIS's denial, *de novo*, and concluded that it agreed with USCIS's conclusion that Mrs. Sallam failed to meet her burden of proof for the reasons set forth in USCIS's denial.  (Doc. No. 15-1, PageID# 144.)  This is sufficient to establish that the BIA fully considered Mrs. Sallam's claims.  *See Torres v. I.N.S.*, No. 93-3617, 28 F.3d 1214, 1994 WL 284540 (6th Cir. June 27, 1994) (unpublished disposition); *see also Scorteanu*, 339 F.3d at 412.

18

The Court disagrees with the Sallams' assertion that the BIA's instant decision is analogous to the decision at issue in *Guts v. Lynch*. (Doc. No. 19, PageID# 842.) In *Guts*, the BIA's opinion consisted of a single paragraph and contained no indication that the BIA considered the record in the case, nor the evidence submitted in support of the petitioner's motion. *Guts v. Lynch*, 623 Fed. App'x 304, 306 (6th Cir. 2015). The Sixth Circuit concluded that the BIA's failure to explore the record in any manner amounted to an abuse of discretion. *Id.* The instant BIA decision is distinguishable because the BIA indicated that it considered the record *de novo* and agreed with the USCIS's reasoning. (Doc. No. 15-1, PageID# 144.) Moreover, the BIA observed, based on its review, that Mrs. Sallam largely resubmitted previously-considered evidence in support of her third I-130 petition. (*Id.*) The BIA also specifically identified Mrs. Sallam's failure to adequately explain why she was identified as "single" in her July 2015 medical notes when she had married Mr. Sallam just six months prior as an example of her failure to reconcile inconsistencies in the record and establish the marriage as *bona fide*. (*Id.*) Thus, here, unlike in *Guts*, the BIA explored the record, considered Mrs. Sallam's (largely repetitive) evidence, and ultimately concluded that she "did not present sufficient evidence of a joint life with her spouse," and therefore "did not meet her burden of proof." (*Id.*)

In their final counterargument, the Sallams contend that Defendants repeatedly demanded more evidence than necessary to satisfy a preponderance of the evidence standard. (Doc. No. 19, PageID# 844.) According to the Sallams, Defendants implicitly based their denials on the Sallams' failure to submit clear and convincing evidence or evidence that proves beyond a reasonable doubt that they did not enter into a sham marriage. (*Id.*) This argument is unpersuasive.

First, as discussed above, Defendants are permitted to determine credibility and weigh evidence in making their determinations. *See Sholanke*, 854 Fed. App'x at 28; *see also, e.g.,*

19

*Ukranian Autocephalous Orthodox Church v. Chertoff*, 630 F. Supp. 2d 779, 789 (E.D. Mich. 2009). In *Ukranian Autocephalous*, the court held that the USCIS Administrative Appeals Office did not act arbitrarily or capriciously when it concluded that the petitioner-church failed to establish that the beneficiary-priest was employed by the church on a full-time basis for two years prior to its petition. *Id.*  The petitioner-church claimed that the beneficiary-priest worked at a church in Indiana, but submitted conflicting evidence that indicated the beneficiary used a mailing address in Detroit, Michigan, more than 200 miles away. *Id.*  The petitioner-church failed to explain why the beneficiary would use such a mailing address or how the beneficiary obtained a Michigan state identification card if he lived and worked full-time in Indiana.  *Id.*  The court concluded that the USCIS reasonably concluded that such contradictory evidence undermined the credibility of the petitioner-church's attempt to explain the discrepancy and assigned the petitioner-church's explanation very little weight. *Id.* at 788-89.  According to the court, such a conclusion was reasonable because an attempt to reconcile conflicting accounts, "absent competent objective evidence pointing to where the truth, in fact, lies" is not sufficient.  *Id.* (quoting *Matter of Ho*, 19 I. & N. at 591-92).

Likewise, here, USCIS was presented with conflicting evidence regarding Mrs. Sallam's marital status around the time of the inception of her marriage.  On one hand, Mrs. Sallam's July 6, 2015 medical notes describe her marital status as "Single with no children," fewer than six months after the inception of her marriage to Mr. Sallam.  (Doc. No. 15-3, PageID# 207.)  On the other hand, Mrs. Sallam swore in a June 10, 2019 affidavit that she didn't visit her doctor very often and "[didn't] think at the time of the visit [she] had updated [her] personal information, such as marital status, with the doctor, which is why it still said [she] was single."  (*Id.* at PageID# 211.)  Notably, Mrs. Sallam did not conclusively assert whether she updated her personal information with her doctor, or whether

20

she was asked to update her personal information by her doctor. She also failed to submit any other competent, objective evidence to substantiate her assertion that she didn't "think" she updated her personal information at her 7/6/2015 doctor appointment. Further, while the Sallams submitted other evidence such as undated photos and utility bills dated between 2017 and 2019, such evidence does not demonstrate that their marriage was *bona fide* at the time of its **inception**, i.e., around early- to mid-2015. (*See* Doc. No. 15-2, PageID# 176-77.) As discussed above, when an I-130 petition is filed based on marriage, the petitioner must show by a preponderance of the evidence that the marriage was *bona fide* at its inception—in other words, that the couple intended to establish a life together around the time they got married. *See Matter of Soriano*, 19 I. & N. Dec. 764 (B.I.A. 1988) ("The central question is whether the bride and groom intended to establish a life together at the time they were married"); *Matter of Laureano*, 19 I. & N. Dec. 1 (B.I.A. 1983) (same). Thus, USCIS weighed the conflicting evidence before it and concluded that the July 6, 2015 medical notes were more credible than Mrs. Sallam's somewhat vague recollection of a doctor appointment from four years prior, and that the Sallams' utility bills and tax returns from 2017 through 2019 were irrelevant to establishing whether the Sallams' marriage was *bona fide* at its inception. This conclusion was reasonable. *Ukranian Autocephalous Orthodox Church*, 630 F. Supp. 2d at 789. It was also reasonable for the BIA, in its *de novo* review, to weigh the same conflicting evidence and reach the same conclusion. *Id.*

Second, it is well-established that Article III courts are not permitted to re-weigh the evidence: "[O]ur task is not to reweigh the evidence and determine which of the competing views is more compelling. It is instead to ensure that substantial evidence supports the BIA's judgment." *Karnaukh v. Mukasey*, 263 Fed. App'x 460, 465 (6th Cir. 2008) (quoting *Gonahasa v. INS*, 181 F.3d 538, 543

21

(4th Cir. 1999)). Because this is a "deferential standard of review," the Court "may not reverse the BIA's decision simply because [it] might have decided the matter differently." *Id.* (citing *Koliada v. INS*, 259 F.3d 482, 487-88 (6th Cir. 2001)). This Court may not re-weigh Mrs. Sallam's July 6, 2015 medical notes against her June 9, 2019 affidavit and substitute its judgment for that of the agencies. *See F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513-14 (2009).

Finally, the Court rejects the Sallams' assertion that Defendants "implicitly" applied the marriage-fraud bar under 8 U.S.C. § 1154(c) (also known as INA § 204(c)). (Doc. No. 19, PageID# 843-44.) A visa petition may be denied pursuant to INA § 204(c) where there is evidence in the record to indicate that an alien previously conspired to enter into a fraudulent marriage. *Matter of Laureano*, 19 I. & N. Dec. 1 (BIA 1983). Under INA § 204(c), USCIS may not approve a petition if the beneficiary "has previously been accorded, or has sought to be accorded," an immigration benefit as the spouse of a U.S. citizen or lawful permanent resident "by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws," or the beneficiary "attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." 8 U.S.C. § 1154(c). Neither USCIS's denial nor the BIA's dismissal suggest that either agency applied INA § 204(c)'s marriage-fraud bar. (Doc. No. 15-1, PageID# 144-152.) In the "Applicable Law/Regulations" attachment appended to USCIS's denial letter, the agency does not list any provision related to the marriage-fraud bar in its list of laws and regulations applicable to its denial of Mrs. Sallam's third I-130 petition. (*Id.* at PageID# 152.) Moreover, the BIA expressly indicated that Mrs. Sallam "may file a new visa petition on the beneficiary's behalf supported by competent evidence establishing his eligibility for the immigration status sought." (Doc. No. 15-1, PageID# 144.) It is clear, based on this invitation, that the BIA did not consider Mr. Sallam

permanently barred from receiving an immigration benefit through an I-130 petition.  Thus, this counterargument lacks merit.

Accordingly, the Court concludes that the BIA's decision was neither arbitrary nor capricious.

## IV.  Conclusion

For all the foregoing reasons, Defendants' Motion is GRANTED and Plaintiffs' Motion is DENIED.

**IT IS SO ORDERED.**

_s/Pamela A. Barker_
PAMELA A. BARKER
U. S. DISTRICT JUDGE

Date: February 14, 2022

23